IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN R. GRAHAM, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }   Case No.: 2:11-CV-2385-RDP |
| | } |
| TRUGREEN LANDCARE | } |
| OF ALABAMA, LLC. | } |
| | } |
| Defendant. | } |

## MEMORANDUM OPINION

This case is before the court on Defendant's Renewed Motion to Dismiss (Doc. # 21), filed January 12, 2012. By agreement of the parties at the April 5, 2012 telephone conference, the court determined that it would treat Defendant's Motion as a motion for summary judgment, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. (Doc. # 28). The court will refer to Defendant's Motion (Doc. # 21) throughout this opinion as a Motion for Summary Judgment. Defendant's Motion for Summary Judgment has been fully briefed. (Docs. # 25, 26, 29).

Having considered the briefs and evidentiary submissions, the court finds that Defendant's Motion for Summary Judgment (Doc. # 21) is due to be denied for the reasons set out below.

## I.   PROCEDURAL HISTORY

On June 30, 2011, Plaintiff John R. Graham initiated this suit against his former employer, Defendant Trugreen Landcare of Alabama, LLC,[1] alleging discrimination claims based on race under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981. (Doc. # 1 ¶ 1). On July 26, 2011, Defendant

---

[1] Defendant asserts that it has been incorrectly named in this lawsuit; its proper name is "TruGreen Limited Partnership."

filed a Motion to Dismiss (Doc. # 6), arguing that Plaintiff's claims are subject to arbitration because Plaintiff consented to an arbitration agreement for all employment-related disputes. Plaintiff responded that he does not remember seeing or signing the agreement and does not believe that the signatures on the documents are his. (Doc. # 9). The court conducted a motion docket on September 27, 2011 and with the parties' agreement, directed the parties to engage in limited discovery on whether Plaintiff signed the arbitration agreement. (Doc. # 12). The court terminated Defendant's Motion to Dismiss, allowing Defendant to renew its Motion once limited discovery was completed.

On January 12, 2012, Defendant renewed its Motion to Dismiss (Doc. # 21), seeking to dismiss Plaintiff's Complaint under Federal Rule 12(b)(6) and sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4. (Doc. # 22). Defendant argues that Plaintiff agreed to arbitrate all employment-related disputes by executing the "We Listen" Acknowledgment Form on February 1, 2010 and signing the Handbook Acknowledgment Form on February 10, 2010. Defendant submitted the following evidence in support of its arguments: a declaration from Roy Cohen, the Human Resources Business Partner for Defendant (Doc. # 6-1 at 1-3); an affidavit from Michael Dunkin, a Branch Administrator for Defendant (Doc. # 22-1 at 1-4); the arbitration agreement and other documents Plaintiff allegedly signed (Docs. # 22-1 at 5-25, # 22-2, # 6-1 at 4-22); and the transcript of Cohen's telephone deposition (Doc. # 22-3). The only evidence Plaintiff submitted was his affidavit (Doc. # 9-1), where he denied ever agreeing to the arbitration agreement.

Because the parties submitted evidence outside of the pleadings, the court conducted a telephone conference on April 5, 2012 on whether Defendant's Motion should be treated as a Motion for Summary Judgment. The parties agreed that it should, and consistent with that agreement the court ruled pursuant to Rule 12(d), that Defendant's Motion (Doc. # 21) would be treated as a Rule

2

56 motion for summary judgment. (Doc. # 28). The court gave the parties an opportunity to submit supplemental material, but only Defendant did so — it filed its Sur-Reply on May 10, 2012. (Doc. # 29).

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Affidavits or declarations "used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. No genuine issue of material fact exists when there is a "complete failure of proof concerning an essential element of the nonmoving party's case." *Id*. Accordingly, only "when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Magnolia Capital Advisors, Inc. v. Bear Sterns & Co.*, 272 F. App'x 782, 785-786 (11th Cir. 2008) (citations omitted). Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman*, 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-1117 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (*i.e.*, facts that would entitle it to a directed verdict if not controverted at trial), *Fitzpatrick*, 2 F.3d at 1115, and by showing that "on all the essential elements of its case . . . no reasonable jury could find for the nonmoving party," *Four Parcels of Real Prop.*, 941 F.2d at 1438. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

On the other hand, if the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in at least one of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed

4

verdict at trial. Second, a moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment by affirmatively showing the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### III.   RELEVANT FACTS[2]

When Defendant hires an employee to join its workforce, it routinely provides the employee with many documents to review and/or sign. (Doc. # 22-1 at 1-2). Included in these documents are the "We Listen" booklet, "We Listen Acknowledgment" form, and "Handbook Acknowledgment" form. (*Id*.) It is undisputed that, if properly agreed to and executed, the We Listen Acknowledgment

---

[2] The facts presented are undisputed, unless the court notes otherwise. Generally, on a motion for summary judgment, the court requires the parties to submit a numbered list of the undisputed facts. However, because Defendant's Motion was converted to one for summary judgment after the motion had been filed, the parties have not submitted such a list. Therefore, the court has gleaned the undisputed facts from the evidentiary submissions and the parties' briefs.

form and Handbook Acknowledgment form constitute an arbitration agreement for all employment-related disputes arising out of an employee's employment with Defendant.

After Defendant filed the We Listen Acknowledgment Form and the Handbook Acknowledgment Form, both of which bear what Defendant argues are Plaintiff's signatures (Doc. # 6-1 at 21-22), Plaintiff submitted an affidavit. Plaintiff testified that he "recall[s] neither seeing nor signing such documents, and do[es] not believe the signatures are [his]."[3] (Doc. # 9-1). He stated that there are differences between his handwriting and the handwriting on the documents that Defendant argues he allegedly signed. (*Id*.)[4]

Dunkin, a Branch Administrator for Defendant, stated that he conducted orientation for Plaintiff and another employee, Alan Fetter. (Doc. # 22-1 at 1-2). Dunkin presented Plaintiff and Fetter with all of the standard paperwork, which included the documents containing the arbitration agreement. (*Id*.) Dunkin stated that he sat with Plaintiff and Fetter while they completed their paperwork, and once they completed their paperwork, they passed it to him. (*Id*. at 1-3). Dunkin specifically remembered going through their documents to ensure that they signed everything, but "do[es] not recall whether there were any missing signatures." (*Id*. at 3) Dunkin attached the documents to his affidavit that he alleged are the documents that Plaintiff and Fetter signed during their new hire orientation. (*Id*. at 3, 5-46). Dunkin did not provide the dates on which he conducted

---

[3] The affidavit provides that it was signed by Plaintiff on August 3, 2011, but the notary appears to have dated the affidavit February 12, 2014 (Doc. # 9-1 at 2). Since this document was submitted on August 3, 2011, the court presumes that this is the correct date.

[4] Plaintiff also testified that he has reason to believe that Defendant would forge his signature. He explained that Defendant is owned by The ServiceMaster Company, which also owns Terminex International, Inc., Plaintiff's former employer. He stated that while working at Terminex, a ServiceMaster employee forged his name on a check at least once. (*Id*.). The court does not view this portion of Plaintiff's declaration as competent Rule 56 evidence, and has not considered it in ruling on this motion.

6

orientation for Plaintiff and Fetter, nor did he provide any dates for the events discussed in his affidavit. Dunkin stated that he has never observed an employee's signature being forged and has never heard of Defendant encouraging the forging of employees' signatures. (*Id*. at 3).

The documents that Dunkin testified Plaintiff signed during new hire orientation are attached to his affidavit as "Exhibit A." (*Id*. at 3, 5-25). These documents include standard forms that employees are typically required to sign, as well as the documents that comprise the arbitration agreement. (*Id*. at 5-25). The Handbook Acknowledgment form bears the name "John R. Graham" and a corresponding signature, and is dated February *10*, 2010. (*Id*. at 15). The We Listen Acknowledgment form contains Plaintiff's printed name and a corresponding signature, and is dated February *1*, 2010. (*Id*. at 21).

The fact that the dates on the Handbook Acknowledgment form and We Listen Acknowledgment form are different is inconsistent with Dunkin's affidavit, where Dunkin indicated that the documents Plaintiff allegedly signed during new hire orientation were all signed on the same day. What is more, the documents that Fetter allegedly signed on this same day also bear different dates. (Doc. # 22-1 at 26-46). Fetter's documents are dated January 26, February 1, February 9, and February 11, 2010. Neither party has offered its position on the discrepancy between (1) the dates on the documents (Doc. # 22-1 at 15, 21) and (2) Dunkin's sworn statement providing that he watched Plaintiff sign all of the documents in one sitting (Doc. # 22-1 at 1-4). It is not clear whether Dunkin was mistaken (deliberately or not) in his affidavit about when these documents were allegedly received and signed, or whether there is an allegation that the dates on the documents are incorrect. Dunkin's affidavit creates genuine issues of fact regarding whether Dunkin actually witnessed Plaintiff receive and sign any of documents containing the arbitration agreement, whether

the dates on these documents reflect the actual dates on which they were signed and received, and consequently, whether Plaintiff actually signed all (or some) of the documents in question.[5] Although it is undisputed that Defendant's usual procedure for new employees is that the office manager provides them with all of the paperwork that they must sign and watches them sign the paperwork[6] (Doc. # 22-3 at 15), it is unclear whether the usual procedure occurred in Plaintiff's case.

## IV.  DISCUSSION

The resolution of this dispute turns on whether Plaintiff has placed the validity of the arbitration agreement at issue. If the court finds that Plaintiff has done so, the issue of whether the arbitration agreement is enforceable will be decided by a jury.[7]

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16 (2006), controls the validity and enforcement of covered arbitration agreements. "The FAA embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citation and quotation marks omitted). When a party moves a court to compel arbitration pursuant to an arbitration agreement:

---

[5] Defendant also submitted the declaration of Roy Cohen, the Human Resources Business Partner for Defendant (Doc. # 6-1 at 1-3), wherein Cohen stated that Plaintiff executed the We Listen Acknowledgment form on February 1, 2010 and the Handbook Acknowledgment form on February 10, 2010. However, Cohen later admitted that he did not witness Plaintiff sign these documents and that his declaration was purely based on his observation of the documents. (Doc. # 22-3 at 17-18). Because Cohen admitted that his declaration was not based on personal knowledge, the court does not consider his declaration. *See* Fed. R. Civ. P. 56(c)(4). Nevertheless, the declaration offers no insight into when and if Plaintiff was presented with the arbitration agreement.

[6] Cohen was deposed by telephone on December 20, 2011. He has never met Plaintiff and does not work in Defendant's Birmingham location. He testified regarding Defendant's usual procedures for new employees. (Doc. # 22-3).

[7] Whether the court or jury determines the arbitrability issue is up to the party objecting to the arbitration agreement, *see* 9 U.S.C. § 4, and Plaintiff has requested a jury trial in his Complaint (Doc. # 1 at 7).

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, . . . the court shall hear and determine such issue.

*Id.* § 4. A review of this statutory provision makes clear that Congress expressly assigned the duty of deciding issues concerning the "making of the arbitration agreement" to the courts. *Id.*

The Supreme Court, in analyzing the role of the courts in enforcing arbitration agreements under the FAA, has noted that "[a]rbitration under the Act is a matter of consent, not coercion . . . ." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). The Court has further explained that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). Thus, it is incumbent upon a court to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all . . . ." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *see also Chastain v. Robinson–Humphrey Co.*, 957 F.2d 851, 853–56 (11th Cir.1992).

When confronted with a question related to the validity of an arbitration agreement, a court must consider both federal policy and applicable state contract law. As the Eleventh Circuit has explained:

> The FAA preempts state law to the extent it treats arbitration agreements differently than other contracts. The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts. However, state law generally governs whether an enforceable contract or agreement to arbitrate exists. Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts. The federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.

*Caley*, 428 F.3d at 1367–68 (citations and quotation marks omitted); *see also Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir.2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements.").

Taking into account the general federal policy favoring arbitration, the Eleventh Circuit has found that when a party denies the existence of a valid arbitration agreement, "that party must substantiate the denial of the contract with enough evidence to make the denial colorable." *Chastain*, 957 F.2d at 855. "A party cannot place the making of the arbitration agreement in issue simply by opining that no agreement exists." *Id*. Rather, the Eleventh Circuit held, "To make a genuine issue entitling the party seeking to avoid arbitration to a trial by jury on the arbitrability question, an unequivocal denial that the agreement had been made is needed, and some evidence should be produced to substantiate the denial." *Id*. at 854 (alterations omitted) (quoting *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir.1980)). Thus, in order to place the making of an

arbitration agreement in issue, the party seeking to avoid arbitration must (1) unequivocally deny that an agreement to arbitrate was made and (2) provide some evidence to substantiate the denial. *Chastain*, 957 F.2d at 854 (adopting the former Fifth Circuit's two-part test as described in *T & R Enters. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980)); *Wheat First Securities, Inc. v. Green*, 993 F. 2d 814, 817 (11th Cir. 1993).

Plaintiff has denied that he is bound to arbitrate his claims and testified that he does not recall ever seeing or signing the arbitration agreement. There is no question that Plaintiff has unequivocally denied that he consented to the arbitration agreement, and his affidavit substantiates his denial. Although Defendant provided Dunkin's affidavit in attempt to refute Plaintiff's affidavit, Dunkin's affidavit, read in conjunction with the accompanying documents, actually muddles the issues. The inconsistencies between Dunkin's affidavit and the attached documents create disputes of material fact regarding whether Dunkin witnessed Plaintiff sign certain documents and if so, which documents and when. Defendant has thus failed to produce any affirmative evidence establishing that Plaintiff received and signed the arbitration agreement.

Further, Defendant challenges whether Plaintiff's "mushily worded" affidavit actually constitutes an unequivocal denial. To prevail on summary judgment, however, Defendant must do more than quibble over the semantics of Plaintiff's affidavit. The court concludes that Plaintiff's affidavit contains a clear denial of ever agreeing to an arbitration agreement.[8] Accordingly, there is

---

[8] Defendant has presented caselaw espousing the principle that affidavits must be based on personal knowledge, not a party's beliefs. (Doc. # 26 at 5). The court need not reach the issue of whether Plaintiff's affidavit contains mere beliefs rather than personal knowledge because here Defendant's failure to prevail on summary judgment is due to its own failure to meet its Rule 56 burden.

a genuine issue of material fact as to whether Plaintiff agreed to arbitrate employment-related claims with Defendant, and Plaintiff has placed the making of the arbitration agreement in issue.

## V.　CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. # 21) is due to be denied.  The issue of whether there was a valid arbitration agreement must therefore be resolved by a jury.  The court will enter a separate order denying the Motion.

**DONE** and **ORDERED** this ____19th____ day of June, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE